# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GLORY LOVE WILKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 4921 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| JOHN E. POTTER, POSTMASTER | ) |
| GENERAL UNITED STATES POSTAL | ) |
| SERVICE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is defendant John Potter's ("Defendant") motion for summary judgment against plaintiff Glory Love Wilkes ("Plaintiff"). For the reasons set forth below, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

**I.   FACTS**

Plaintiff is a 56 year old African-American female. On July 15, 1970, Plaintiff began her employment with the Defendant. In March 1982, Plaintiff began working as a Window Clerk –Level 5 at Defendant's Rogers Park Station. In April 1989, Plaintiff was given a bid assignment at Defendant's Norwood Park Station, with duty Monday through Friday and

Saturday and Sunday off. Plaintiff continued to work at Norwood Park Station until her retirement in 2005.

Plaintiff suffered from uncontrolled hypertension. Plaintiff claims this condition affected her ability to think clearly and often left her tired. Plaintiff testified that as a result of the condition, she could not "function normal," and needed more rest. During 2002 to 2005, Plaintiff took medication, which was effective at controlling her hypertension.

**FMLA Claim**

The Postal Service ELM, Section 513.331 requires that leave for more than three days be scheduled and approved in advance if practicable, and that sick leave requests be supported with medical documentation explaining the reasons why the employee was incapacitated for duty. Pursuant to the collective bargaining agreement, full-time Postal Service employees accrue four hours of paid sick leave every two weeks, and are permitted to accumulate this sick leave over the years that they are employed. Accrued sick leave may be used when an employee is unable to work due to injury or illness, subject to advanced notice and medical documentation. If an employee's leave balance is exhausted or if an employee's request for sick leave is disapproved, the employee is not paid for the days the employee was absent, and the absence is characterized as "leave without pay" (LWOP) or "absent without leave" (AWOL).

In March 2002, Plaintiff submitted her request for leave under the FMLA. Plaintiff claims her documentation advised the Defendant of her medical condition, and stated the probable duration of her condition would be approximately one year. Plaintiff was absent from work from March 21, 2002 to April 29, 2002. On April 30, 2002, Plaintiff met with Defendant for questioning regarding her medical condition and her absences. Plaintiff was absent again

from May 13, 2002 to May 16, 2002, and June 6, 2002 to June 23, 2002. Plaintiff claims that Defendant ignored and/or denied Plaintiff's FMLA leave requests and charged Plaintiff with an Absent Without Pay ("AWOP") status for the days she was absent from work. Plaintiff claims that she worked on May 10, 2002 without getting paid. Although Plaintiff cannot remember exact dates, Plaintiff claims she was erroneously charged with AWOP or LWOP on May 23, 2002. Postal records show that Plaintiff was not charged with leave without pay on May 23, 2002, but rather Plaintiff worked on that day and was properly paid. Defendant claims that all of Plaintiff's requests for FMLA leave have been approved, and no adverse actions were taken account of Plaintiff's FMLA claims.

In July 2003, Plaintiff claims she again requested FMLA sick leave, and was denied by Defendant. Defendant denies that Plaintiff requested FMLA sick leave. Plaintiff claims that she was not charged any sick leave or annual leave, even though she had the hours. On July 14, 2003, Plaintiff claims that she was forced to get a doctor's statement during work hours, and as a result was charged seven hours of leave without pay. On July 16, 2003, Plaintiff claims that Defendant forced her to go to first aid, and then denied her pay.

On July 26, 2003, Plaintiff requested and Defendant approved 56 hours of annual leave. However, Defendant paid Plaintiff 40 hours of annual leave, and charged Plaintiff with 16 hours of LWOP.

At the time of her retirement, Plaintiff had a sick leave balance of 20 hours, and an earned annual leave balance of 9.1 hours. Between August 25, 2003 and September 2005, Plaintiff used 296 hours of sick leave, and 403 hours of annual leave.

**Title VII + Rehabilitation Act Claims**

In June 2002, Plaintiff claims that she was forced to take a fitness for duty examination after returning to work, and was not paid. In September 2002, the Postal Service offered window clerk duties to mail carriers. As a result, Plaintiff was denied the opportunity to work overtime hours as a window clerk. Plaintiff admits that all window clerks were equally affected by this assignment.

In August 2002 and October 2002, Plaintiff filed charges of discrimination against Defendant with the United Postal Service Equal Employment Opportunity Office. The charges were later consolidated under EEOC case number 210-2003-06359X. Plaintiff claims that as a result of the EEOC claims, Defendant retaliated against Plaintiff in February 2003, by changing Plaintiff's Regular Days Off ("RDO") from Saturday and Sunday to Sunday and Tuesday. Plaintiff alleges that on Saturdays, other clerks were allowed to start and finish early, but Plaintiff was required to work from 9:00 a.m. until 5:30 p.m. Plaintiff claims she was often the sole employee, other than the janitor, working until 5:30 p.m.

In December 2002, a new Station Manager, Natasha Washington (African American woman) was assigned to the Norwood Park Station. At the time of the events at issue, Washington was unaware of Plaintiff's previous EEOC activity. Upon assuming her new position, Washington reviewed all the employees' bid assignments. According to the Postal Service Human Resource Information System Report ("HRIS Report"), Wilkes was scheduled to work Monday, and Wednesday through Saturday, with Sunday and Tuesday off. Plaintiff's 1989 schedule provided that she had Saturday and Sunday off. Washington contacted Postal Service Human Resources which advised that Wilkes had previously bid on a job with Saturdays and Sundays off, but had failed to qualify for it. Human Resources advised that Wilkes' assigned bid

had Sundays and Tuesdays off as documented in the HRIS report. Washington's review identified several individuals who were not working their assigned bid or schedule. These individuals include three window clerks: Ruth Williams, Sushma Sheth, and the Plaintiff.

Plaintiff was given written notice that in two weeks she would be required to work her assigned duties, with Sundays and Tuesdays off. The same notice was given to the other two window clerks who were not working according to the HRIS Report. All three were advised that if the two weeks was not sufficient to make personal arrangements, employees could request in writing that the implementation fo the schedule change be delayed. Sheth and Williams made requests; Plaintiff did not, contending that she was entitled to Saturdays and Sundays off from her 1989 bid. Defendant claims that Washington gave Plaintiff the written notice and advisory notice. Plaintiff claims all communication was conducted through her direct supervisor George Clenna, who knew about the previous EEOC claim.

In April 2004, Plaintiff filed a grievance for the change in her RDO. Plaintiff provided Defendant with actual bid award notice from 1989. The grievance was denied for being untimely. Nonetheless, in September 2004, the grievance was settled, allowing Plaintiff to have Saturday and Sunday off.

On June 2, 2005, the EEOC issued the Plaintiff a right to sue. Plaintiff filed her complaint with this court on August 25, 2005. Plaintiff alleges action pursuant to Title VII of the Civil Rights Act of 1964 for race discrimination, the Rehabilitation Act for her uncontrolled hypertension, and the Family Medical Leave Act for denying her sick leave. On July 31, 2006, Defendant filed this motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, along with any affidavits, show there is no genuine issue of fact. Such a showing entitles the moving party to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 720 (7th Cir. 2004). A genuine issue of material fact exists only when a reasonable factfinder could find for the nonmoving party, based on the record as a whole. The court does not weigh the evidence and it does not make credibility determinations. Instead, the court makes all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000); *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). If a party fails to present proof on an essential element of his or her case, then all other facts become necessarily immaterial. *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 509 (7th Cir. 1999).

## III. ANALYSIS

### A. Title VII

Disparate treatment based on race is actionable under Title VII if the plaintiff can establish that she has been the "victim of intentional discrimination." *Bruno v. Crown Point*, 950 F.2d 355 (7th Cir. 1991). The plaintiff may either offer direct proof of discrimination, or rely on indirect evidence, using the McDonnell Douglas burden shifting method of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801 (U.S. 1973). Under the McDonnell Douglas method, plaintiff must first establish a prima facie showing of discrimination by a preponderance of the evidence. *Id.* Second, if the plaintiff is successful, the burden shifts to the defendant "to

articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id*. Third, if the defendant satisfies his burden, the plaintiff must then show by a preponderance of the evidence that the legitimate reasons stated by the defendant were not its true reasons, but were pretext for discrimination. *Id.*

A plaintiff establishes a prima facie case for race discrimination by showing (1) she was a member of a protected class; (2) she was meeting her employer's legitimate business expectations; (3) she suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605 (7th Cir. 2001). To survive a motion for summary judgment, a plaintiff must prove, or show that there exists a genuine issue of material for, each of the four prongs. *DeLuca v. Winer Indus.*, 53 F.3d 793 (7th Cir. 1995).

The court finds no evidence of direct proof, and will proceed using the McDonnell Douglas analysis. In support of Plaintiff's racial discrimination claim, Plaintiff alleges that (1) in June 2002, she was forced to take a fitness for duty examination after being ill, (2) she was denied opportunity to work overtime because the Postal Service offered window clerks duties to mail carriers, (3) she was charged with being absent without leave when she, in fact, worked, as on May 23, 2002, and (4) she was retaliated against for her September 2002 EEOC complaint, where the Postal Service changed her regular days off from Saturday and Sunday to Sunday and Tuesday.

Plaintiff claims that on June 2002, she was forced to take a fitness for duty examination after returning to work from an illness. This, the Plaintiff contends, is a "materially adverse employment action," sufficient for Title VII consideration. A materially adverse employment

action is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993) Such an action "might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. Requiring an employee, who just returned from sick leave to take a fitness for duty examination one time does not rise to the level of a "materially adverse employment," as required by the McDonnell-Douglas test for establishing a prima facie case. It may have been inconvenient for the Plaintiff to take the fitness exam, but a onetime request, particularly after sick leave, is not sufficient to invoke Title VII sanctions.

Plaintiff claims that she was discriminated against when Defendant offered window-clerk duties to mail carriers, thereby denying Plaintiff of the opportunity to work overtime as a window clerk. This policy was administered across the board, such that it affected all mail carriers and window clerks in the same way. Thus, there is no evidence that similarly situated employees were treated more favorably, as required by the MacDonnell-Douglas prima face test, or that any pretext was directed at the Plaintiff in particular.

Plaintiff claims that she was erroneously charged with LWOP, and was not paid even though she worked. Plaintiff did not remember exact dates, but mentioned May 23, 2002 as a date she worked but did not receive pay. Postal Service records show that Plaintiff did work on May 23, 2002, and was properly paid. Even granting that Plaintiff did not know specific dates, she has produced no evidence that she was, in fact, not paid for days worked or that similarly situated employees were treated more favorably, or that there was pretextual motive. Plaintiff

simply lists dates when she requested FMLA leave and was denied or charged with LWOP. This is more appropriately taken up under the FMLA claim, and is not sufficient for Title VII protection.

Plaintiff claims that she suffered race discrimination and retaliation when, in February 2003, the Defendant changed her regular days off from Saturday and Sunday to Sunday and Tuesday. Plaintiff argues that this adverse employment action was retaliation for her August 2002 and October 2002 EEOC claims. Defendant argues that Station Manager Washington, who had decision-making authority, did not have knowledge of Plaintiff's previous EEOC claim, and thus could not have been acting out of retaliation. Plaintiff claims that direct supervisor Clenna informed Plaintiff of the change, and Clenna had knowledge of the EEOC claim. However, Plaintiff does not present evidence that Clenna told Washington of the previous EEOC claim or that Clenna had decision-making power. The fact that Clenna gave notice to Plaintiff does not negate the fact that Washington made the decision for the change without knowledge of the EEOC claim. Further, Washington relied on the Postal Service Human Resource Information System ("HRIS") records, which stated that Plaintiff's days off were Sunday and Tuesday. There is simply no evidence that Washington acted with any pretext or racially discriminatory motive. Indeed, Plaintiff alleged that two other employees were identified as not working their assigned schedule as shown by the Postal Service record. The facts show that Washington treated all three in the same manner–she notified them of their deviance from the HRIS record, and gave them two weeks to align their schedules with the record. If they required more time, she gave them leave to request in writing that the implementation of the schedule change be delayed. The other two employees requested the delayed implementation; Plaintiff did not.

There is no evidence that Defendant treated similarly situated employees more favorably. Thus, Plaintiff does not have an adequate Title VII claim under these facts.

In all allegations, evidence for pretext is lacking. Plaintiff has worked for Defendant since 1970, and did not complain of any wrongful treatment until she began having health problems in March 2002. Plaintiff's complaint alleges that "after Plaintiff was diagnosed with her uncontrolled hypertension, Defendant began engaging in a pattern and practice of discriminating against Plaintiff on the basis of her race and disability." Plaintiff presents no connection between the alleged discrimination on account of her changed medical condition and her race. If anything, it suggests that a more reasonable explanation for an alleged change in Defendant's treatment towards Plaintiff may be due to her medical condition rather than her race.

For the foregoing reasons, Defendant's motion for summary judgment as to the Title VII claim is granted.

### B. FMLA

The Family Medical Leave Act ("FMLA") balances the demands of the workplace with the needs of employees to take leave for eligible medical conditions. 29 U.S.C. § 2601(b); *Freemon v. Foley*, 911 F. Supp. 326, 329 (D. Ill. 1995). The FMLA provides eligible employees with up to twelve weeks of unpaid leave, and ensures that those who take such leave will be restored to their former position or an equivalent one upon returning to work. 29 U.S.C. § 2614(a)(1); *Id*.

The FMLA requires a plaintiff to file suit "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C.A. § 2617(c)(1) (West 2001). In cases where the violation is willful, the plaintiff must file suit "within

3 years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C.A. § 2617(c)(2) (West 2001). To successfully allege a willful violation of the FMLA, the plaintiff must show that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (U.S. 1988).

In the present case, the May 2002 FMLA allegations are time-barred under either the two-year or three-year limitation. The July 2003 FMLA allegations are barred by the two-year limitation, but not the three-year limitation. Plaintiff alleges that Defendant "maliciously, wrongfully and willfully refused to grant Plaintiff annual leave as requested" in violation of the FMLA.

By July 2003, Defendant had knowledge of Plaintiff's health condition, as Plaintiff had notified Defendant of her condition and requested FMLA sick leave as early as March 2002, and if Defendant wrongfully denied Plaintiff her properly requested leave, then it is sufficient as a willful violation. As such, the proper statute of limitations is three years.

Whether or not the alleged July 2003 incident was an FMLA violation remains a genuine issue of material fact. Plaintiff submitted a medical statement fax to "Leave Control, Attn: Deborah Harris, F.M.L.A. Co-ordinator" on May 31, 2003. Plaintiff alleges that she requested and was denied FMLA leave in July 2003. Defendant denies that the record shows that the Plaintiff requested FMLA sick leave in July 2003. There remains a genuine issue of material fact as to whether Plaintiff properly filed a FMLA leave request, and whether there was violation of the FMLA by the Defendant. Thus, Defendant's motion for summary judgment as to the FMLA claim is denied.

### C. Rehabilitation Act

Defendant moves for summary judgment on the grounds that Plaintiff is not "disabled" as required by the Rehabilitation Act. The Rehabilitation Act, 29 U.S.C. § 794, requires federal agencies, including the Postal Service, to reasonably accommodate an employee's disability. Section 505 of the Rehabilitation Act provides "a private right of action for federal employees alleging employment-related discrimination on the basis of a disability." *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002); *Hamm v. Runyon*, 51 F.3d 721 (7th Cir. 1995). Under the Rehabilitation Act, a person is "disabled" if he or she "has a physical or mental impairment which substantially limits one or more of such person's major life activities." *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002); *Hamm v. Runyon*, 51 F.3d 721 (7th Cir. 1995). Major life activities are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Id.*; *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995).

Plaintiff had uncontrolled hypertension, which reduced the clarity of her thinking and made her tired. Plaintiff's medical documentation from her doctor stated that Plaintiff may have needed to take time off work for approximately a year. Plaintiff has stated that since 2006 she no longer has problems with hypertension. The Rehabilitation Act requires federal employers to make reasonable accommodations for an employee's permanent disabilities, not temporary health problems. See *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184 (U.S. 2002) on the ADA. Further, Plaintiff has admitted that her medication was effective in controlling her hypertension, and that she no longer has hypertension.

For the foregoing reasons, no reasonable jury would find that Plaintiff's hypertension qualifies as a "disability" as defined under the Rehabilitation Act. Defendant's motion for summary judgment as to Plaintiff's Rehabilitation Act claim is granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part.

Enter:

/s/David H. Coar

_____

David H. Coar

United States District Judge

**Dated: October 27, 2006**